UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| STUART MILLS DAVENPORT, *et al.* | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 16-2445 (ABJ) ) |
| BABAK DJOURABCHI, *et al.* | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Plaintiff Stuart Mills Davenport is the operator and sole owner of Big Bear Café, LLC, a restaurant on the lower level of the multistory row-house where he and his family live. Am. Compl. [Dkt. # 9] ¶¶ 7–10.[1] Defendants Babak Djourabchi and Monica Welt are husband and wife, and they were Davenport's neighbors. *Id.* ¶ 13. On September 21, 2006, defendants loaned Davenport $80,000, and in turn, he executed a Promissory Note for Business and Commercial Purposes ("Note") in favor of defendants. *Id.* ¶ 14; Ex. 1 to Am. Compl. [Dkt. # 9-1] ("Note"). This case arises out of defendants' efforts to collect on the debt and the bankruptcy proceedings that followed.

On October 14, 2015, Davenport filed for Chapter 13 bankruptcy protection in the U.S. Bankruptcy Court for the District of Columbia to prevent a threatened foreclosure on his property by defendants. Am. Compl. ¶¶ 105–06. Defendants filed a proof of claim with the bankruptcy court, alleging that Davenport owed them $121,813.88 under the Note. *Id.* ¶ 120. Davenport objected, claiming that he owed only $54,435.00. *Id.* ¶ 121. The bankruptcy court held a trial to

---

1   In December 2016, plaintiff Davenport filed a complaint in this Court against defendants, and he amended the complaint as of right on February 23, 2017, adding Big Bear Café as a second plaintiff. *See* Compl. [Dkt. # 1]; Am. Compl.

determine the amount due under the Note, and on July 21, 2016, it ruled that Davenport was not in default, and that he owed $53,557.10. *Id.* ¶¶ 122–23; Ex. 9 to Am. Compl. [Dkt. # 9-9] ("Bankr. Mem."); Ex. 10 to Am. Compl. [Dkt. # 9-10] ("Bankr. Order").

Davenport and the Café filed a complaint in this Court arising out of defendants' efforts to enforce the Note. *See* Am. Compl. Plaintiffs have brought a series of common law and statutory claims, and defendants have moved to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. to Dismiss Am. Compl. [Dkt. # 11] ("Defs.' Mot."). They argue that all seven counts are barred by the doctrine of *res judicata*, and alternatively, that they are legally defective and factually unsupported. Defs.' P. & A. in Supp. of Defs.' Mot. [Dkt. # 11-1] ("Defs.' Mem.") at 1–2.[2]

Because plaintiffs could have brought their claims in the prior bankruptcy proceeding, the Court concludes that all seven of plaintiffs' counts are barred by *res judicata*. Therefore, the Court will grant the motion to dismiss. This opinion should not be interpreted in any way as an endorsement of defendants' tactics, however.

**BACKGROUND**

Plaintiff Davenport filed this lawsuit on December 15, 2016, Compl. [Dkt. # 1], and filed an amended complaint on February 23, 2017, which added Big Bear Café as a second plaintiff. Am. Compl. The amended complaint alleges the following facts, which the Court must accept as true for the purpose of resolving the pending motion to dismiss.

On September 21, 2006, defendants loaned Davenport $80,000, and he executed a Note in their favor for $80,000 with interest, which had a maturity date of September 21, 2016. Am.

---

2  Plaintiffs opposed the motion on March 27, 2017, Pls.' P. & A. in Opp. to Defs.' Mot. [Dkt. # 12] ("Pls.' Opp."), and defendants filed a reply on April 3, 2017. Defs.' Reply P. & A. in Further Supp. of Defs.' Mot. [Dkt. # 13] ("Defs.' Reply").

Compl. ¶ 14; Note. The loan was secured by Davenport's property at 1700 1st Street, NW, Washington, DC, the location of Big Bear Café. Am. Compl. ¶¶ 8, 16, 21; *see* Note; Ex. 2 to Am. Compl. [Dkt. # 9-2] ("Deed of Trust"). Although the Note was made to Davenport individually and not to the Café, defendants and Davenport understood that Davenport would use the loan to pay off personal obligations, which would enable him to invest more in the business. Am. Compl. ¶¶ 15–17.

Under the terms of the Note, Davenport could not begin to pay the principal early, unless he paid it all at once. Am. Compl. ¶ 18; *see* Note. He could and did pay interest early, though. Am. Compl. ¶¶ 18, 29–30; *see* Note. For years, Davenport believed he was paying money that he owed on the Note, but he was actually paying ahead of schedule, thereby creating a credit with defendants towards future obligations. Am. Compl. ¶¶ 29–35.

Pursuant to the terms of the Note, Davenport would be in default if he failed to make a payment and that failure continued for four days. Am. Compl. ¶ 25; *see* Note. If he was in default, defendants could foreclose on his property. Am. Compl. ¶ 26; *see* Note. In January 2008, defendants informed Davenport that he was in default on the Note because he had fallen behind the payments on his first mortgage on the property, and that they were accelerating the Note and requiring him to pay the full principal by September 2008. Am. Compl. ¶¶ 36–38. These terms were not included in the Note, and Davenport was in fact not in default. *Id.* ¶¶ 39, 44. Defendants threatened to foreclose on Davenport's property if he did not make a full "lump sum" payment. *Id.* ¶ 40. They told Davenport repeatedly that he was required to make additional payments each month, and they demanded that he provide them with financial information about the Café. *Id.* ¶¶ 41–49; *see* Ex. 11 to Am. Compl. [Dkt. # 9-11] ("Emails"). Davenport complied with most

of these requests. *See* Am. Compl. ¶ 46. Defendants continued to make demands, though, and they persisted in their false accusation that Davenport was in default. *Id.* ¶¶ 52–53; *see* Emails.

Davenport filed for Chapter 13 bankruptcy protection in the U.S. Bankruptcy Court for the District of Columbia on September 2, 2009, which prevented defendants from foreclosing on his property. Am. Compl. ¶¶ 54–55. The bankruptcy court approved Davenport's bankruptcy plan, and he continued making early monthly payments to defendants. *Id.* ¶¶ 63–66. During Davenport's first bankruptcy proceeding, defendants filed two proofs of claim, one on October 19, 2009, and the other on September 3, 2013, both asserting that Davenport owed only $80,000 under the Note. *Id.* ¶¶ 58, 67; *see* Ex. 3 to Am. Compl. [Dkt. # 9-3]; Ex. 4 to Am. Compl. [Dkt. # 9-4]. On November 17, 2014, defendants told Davenport he had been in default since November 2006. Am. Compl. ¶ 73. It was at this point that Davenport obtained legal counsel, and realized he had been over-paying defendants. *Id.* ¶ 75.

On March 12, 2015, Davenport filed a Debtor's Corrected Application in his first bankruptcy case, alleging that defendants violated the bankruptcy court's orders when they demanded extra monthly payments. Am. Compl. ¶ 76. Defendants contested this allegation, claiming that Davenport had been in default since the execution of the Note. *Id.* ¶¶ 77–79. The bankruptcy court denied Davenport relief and did not decide how much he owed under the Note; defendants took the position that he owed $114,568.07. *Id.* ¶¶ 81–82; *see* Ex. 5 to Am. Compl. [Dkt. # 9-5].

Defendants attempted to foreclose on the property in September 2015. Am. Compl. ¶ 90; *see* Ex. 7 to Am. Compl. [Dkt. # 9-7]. On October 14, 2015, Davenport filed his second Chapter 13 bankruptcy petition to stay the attempted foreclosure sale. Am. Compl. ¶¶ 104–07. During the second bankruptcy case, defendants filed a proof of claim alleging that Davenport owed

4

$121,813.88 under the Note. *Id.* ¶ 120. Davenport objected and argued that he owed only $54,435.00. *Id.* ¶ 121. The bankruptcy court held a trial to determine the amount due under the Note. It concluded that Davenport owed $53,557.10 due to a credit in his favor, that he had never been in default, and that defendants' representations regarding how much Davenport owed, his knowledge, and the claimed agreements between the parties contrary to the terms of the Note were not credible. *Id.* ¶ 123; *see* Bankr. Mem.; Bankr. Order.

The complaint alleges that throughout the parties' interactions, defendants have harassed Davenport, and that plaintiffs have suffered as a result of defendants' misrepresentations and actions regarding the Note. *See* Am. Compl. ¶¶ 143–47, 156-57, 162, 176–77, 187–88, 193. Count I alleges wrongful foreclosure on Davenport's property. Am. Compl. ¶¶ 134–47. Plaintiffs allege that defendants initiated foreclosure when they knew or should have known that Davenport was not in default. *Id.* Counts II and VII allege that defendants breached their contract with Davenport and Big Bear Café by instituting foreclosure proceedings when Davenport was not in default on the Note, and that they breached the duty of good faith and fair dealing. *Id.* ¶¶ 148–153, 191–92. Count III alleges that defendants violated D.C. Code § 28-3301, *et seq.*, by disparaging plaintiffs' business through false or misleading representations of material facts. *Id.* ¶¶ 158–61. Plaintiffs allege in this Court that defendants harassed Davenport at work, disrupted Big Bear Café's operations, made baseless and anonymous complaints to the health department, spread rumors about the Café, and falsely listed the property for sale. *Id.* ¶ 161. Count IV alleges that defendants engaged in unlawful trade practices in violation of D.C. Code § 28-3901. *Id.* ¶¶ 164–65. Counts V and VI allege that defendants tortiously interfered with plaintiffs' business and caused plaintiffs financial hardship by instituting wrongful foreclosure proceedings and conducting in-person sit-ins at Big Bear Café. *Id.* ¶¶ 167–88.

**STANDARD OF REVIEW**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

**ANALYSIS**

Defendants have moved to dismiss all seven counts in the amended complaint under the doctrine of *res judicata*. Defs.' Mem. at 10. The doctrine bars parties "from relitigating issues that were or could have been raised" in a previous action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980), citing *Cromwell v. Cty. of Sac*, 94 U.S. 351, 353 (1876). Under this principle, "a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) (citations omitted). These traditional rules of *res judicata* "apply to the decisions of bankruptcy courts." *Katchen v. Landy*, 382 U.S. 323, 334 (1966), citing *Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376–77 (1940). Since all four elements of *res judicata* have been met in this case, plaintiffs are barred from bringing their claims in the present action.

**I.     Plaintiffs' claims constitute the same claims or cause of action.**

"Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002), quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984). "[I]t is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Page*, 729 F.2d at 820, quoting *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir. 1977). The D.C. Circuit has "embraced the Restatement (Second) of Judgments' pragmatic, transactional approach to determining what constitutes a cause of action," and has explained that the Restatement gives "weight to such considerations as whether the facts are related in time, space, origin, or motivation." *U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205, (D.C. Cir. 1985), quoting Restatement (Second) of Judgments § 23(2) (1982). The determination of whether two cases involve the same cause of action requires consideration of not only claims that were actually raised in prior litigation, but also matters that "could have been raised in that action." *Allen*, 449 U.S. at 414, citing *Cromwell*, 94 U.S. at 352.

Here, all of plaintiffs' claims arise from the same nucleus of facts involved in Davenport's Chapter 13 proceeding and the proof of claim decided by the bankruptcy court. *See* Am. Compl. ¶¶ 134–93; Bankr. Mem. Both disputes involve the interpretation and enforcement of the Note, Davenport's payments under the Note, and defendants' attempts to foreclose on the property. *See* Am. Compl. ¶¶ 134–93; Bankr. Mem.

Plaintiffs argue that their new claims do not meet the transactional test because the facts surrounding the present claims "involve a substantially more expansive time, space, origin, and motive than the limited facts resolved by the Bankruptcy Court." Pls.' Opp. at 16. But, it does not matter what factual questions the previous court actually resolved. *See Drake*, 291 F.3d at 66.

The dispositive issue is whether the new claims arise out of the same set of facts and whether the plaintiff *could* have raised them in the previous proceeding. *Id.* Here, there are no new facts giving rise to new possible claims, and plaintiffs are "simply raising a new legal theory," which is "precisely what is barred by res judicata." *Apotex, Inc. v. FDA*, 393 F.3d 210, 217–18 (D.C. Cir. 2004).

Plaintiffs also argue that when *res judicata* is applied in the bankruptcy context, courts consider whether a subsequent independent judgment would "impair, destroy, challenge, or invalidate the enforceability or effectiveness" of the bankruptcy decision when determining if the action involves the same claims or causes of action as the bankruptcy proceeding. Pl.'s Opp. at 11, quoting *In re Residential Capital, LLC*, 522 B.R. 458, 461 (Bankr. S.D.N.Y. 2014). And courts have relied upon that theory to bar subsequent claims.[3] But plaintiffs maintain that the new claims should be allowed to go forward because the "rights or interests established in the prior judgment would [*not*] be destroyed or impaired by prosecution" of this action. Pls.' Opp. at 11–12, citing *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 529 (9th Cir. 1998) (emphasis added).

---

3   *See, e.g.*, *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 492 (D.C. Cir. 2009) (applying the "impairment" factor to counterclaims asserted in the bankruptcy context, and barring subsequent malpractice claims against an attorney after the bankruptcy court had previously awarded attorneys' fees and commented on the adequacy of the attorney's representation); *Robertson v. Cartinhour*, 867 F. Supp. 2d 37, 50 (D.D.C. 2012) (precluding claim under *res judicata* since "it would essentially nullify the jury's findings" in the previous bankruptcy litigation); *Marbury Law Grp., PLLC v. Carl*, 799 F. Supp. 2d 66, 74 (D.D.C. 2011) (noting that the "nullification exception" is "narrow," and "provides that a party *will* be precluded from bringing a future suit on a claim that could have been asserted in a prior action") (emphasis in original); *see also Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 88–89, 92 (2d Cir. 1997) (observing that the "impairment" factor is "an aspect for the test for identity of the causes of action," but ultimately concluding that the causes of action were the same because they "involve[d] the same transaction," so the claims were barred).

However, plaintiffs have not pointed to any authority that holds that an absence of impairment is relevant to the *res judicata* analysis.[4]

Because all of the facts in the complaint arise out of the same loan transaction that served as the basis for the bankruptcy proceeding, the Court concludes that the claims constitute the same cause of action for purposes of *res judicata*.

## II. Plaintiffs' claims are between the same parties or their privies.

The doctrine of *res judicata* applies only if the prior judgment was between "the same parties or their privies." *Drake*, 291 F.3d at 66, quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). Here, the prior bankruptcy proceeding was between defendants and plaintiff Davenport only, but since Big Bear Café is in privity with Davenport for *res judicata* purposes, this element of *res judicata* is met.

"The term 'privity' is an elusive concept, without any precise definition of general applicability . . . . It is sufficient that the word designates a person so identified in interest with a

---

4   Plaintiffs point to *Evans v. First Mount Vernon, ILA*, 786 F. Supp. 2d 347 (D.D.C. 2011), to support their assertion that the current claims do not constitute the same cause of action because they do not impair the bankruptcy court's judgment. Pls.' Opp. at 13. But the case is distinguishable, and it was not decided on that basis. In *Evans*, the plaintiff consented to her Chapter 13 confirmation in bankruptcy court, and did not object to any claims. 786 F. Supp. 2d at 354–55. The court held that claims arising out of the confirmation were not barred by *res judicata* because "issues that must be resolved through adversary proceedings are not part of the Chapter 13 confirmation process, and, unless they are actually litigated, Chapter 13 plan confirmations will not have preclusive effect as to those issues." *Id.* at 354. Here, plaintiffs did challenge defendants' proof of claim in the bankruptcy proceedings, and those issues were actually litigated. *See* Bankr. Mem. at 1. Further, *Evans* never mentions the "impairment" factor, but rather, relies on the general *res judicata* factors in coming to its decision. The court found that the plaintiff's claims were not barred because "they ha[d] not been subject to a final judgment on the merits." *Id.* at 355. Plaintiffs also cite *Gaudin v. Saxon Mortgage Services, Inc.*, 820 F. Supp. 2d 1051 (N.D. Cal. 2011) for the same proposition. Pls.' Opp. at 12, 15. However, *Gaudin* never discusses the impairment theory. *See Gaudin*, 820 F. Supp. 2d at 1053. The Court held that *res judicata* did not bar the plaintiff's subsequent action because "it [did] not implicate any of the matters that were raised by [the plaintiff's] proof of claim in the bankruptcy proceeding." *Id.*

party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." *Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963). When two parties are in privity, their relationship "is such that a judgment involving one of them may justly be conclusive upon the other[]," even though the other was not a party to the judgment. *Gill & Duffus Servs., Inc. v. A. M. Nural Islam*, 675 F.2d 404, 405 (D.C. Cir. 1982).

"[N]onparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment," as well as when a party was "'adequately represented by someone with the same interests who [wa]s a party' to the suit." *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (citations omitted);[5] *see Remy Enter. Grp., LLC v. Davis*, 37 F. Supp. 3d 30, 37–38 (D.D.C. 2014) (finding LLC was in privy with its sole member for purposes of claim preclusion); *Ying Qing Lu v. Lezell*, 919 F. Supp. 2d 1, 4 (D.D.C. 2013) (concluding that the parties were in privity because there was no "meaningful distinction between [plaintiff] the individual and his company").

Davenport, the party to the prior bankruptcy proceeding, *see* Bankr. Mem. at 1, "maintains a 100% ownership interest" in Big Bear Café. Am. Compl. ¶ 10. In light of this substantive legal relationship, Davenport can be said to have represented the Café's interests in the prior bankruptcy proceeding so as to preclude the Café from reasserting claims that were or could have been made in the prior case. Indeed, the ownership of the Café and defendants' efforts to foreclose on the property were the driving factor behind the entire bankruptcy proceeding.

---

5  The Court noted that "[q]ualifying relationships include, *but are not limited to*, preceding and succeeding owners of property, bailee and bailor, [] assignee and assignor," and "suits brought by trustees, guardians, and other fiduciaries." *Taylor*, 553 U.S. at 894 (emphasis added).

Plaintiffs maintain that Big Bear Café cannot be found to be in privity with Davenport because "Big Bear had no interest, whatsoever, in the [bankruptcy] matter." Pls.' Opp. at 17. But, plaintiffs' amended complaint alleges that the Café was "used to secure the Note," the Note was intended to "reduce the financial pressure on Davenport and allow him to invest more resources into Big Bear," the bankruptcy proceeding was instituted to forestall foreclosure on the Café, and that during the bankruptcy proceeding, defendants demanded "financial information on Big Bear, claiming that they were entitled to the information to ensure their 'investment' was safe." Am. Compl. ¶¶ 16–17, 45, 54–55, 104–07. Given those facts and Davenport's sole ownership of the business, the Court finds plaintiffs to be in privity for *res judicata* purposes.

### III. The prior bankruptcy proceeding was a final, valid judgment on the merits.

A judgment on the merits is one that rules on the substantive grounds of the claim, not on defects of form or procedure. *See United States v. Kearney*, 682 F.2d 214, 218 (D.C. Cir. 1982). Plaintiffs do not dispute that the bankruptcy proceeding was a final, valid judgment on the merits. Pls.' Opp. at 6–7 ("Defendants argue . . . and [p]laintiffs do not dispute, that the bankruptcy court['s] . . . ruling constitutes a 'final, valid judgment' on the precise amount Davenport owed under the note."). Therefore, this element of *res judicata* is satisfied.

### IV. The bankruptcy court is a court of competent jurisdiction.

The Supreme Court has described a "court of competent jurisdiction" as "a court with an existing source of subject-matter jurisdiction." *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 560 (2017), citing *Ex parte Phenix Ins. Co.*, 118 U.S. 610 (1886). Here, the bankruptcy court had jurisdiction over defendants' proof of claim against Davenport, *see* 28 U.S.C. § 157(b)(2), and plaintiffs do not argue that the bankruptcy court was not a court of competent jurisdiction regarding this matter. Rather, they argue that the claims they now bring before this Court are claims over

11

which the bankruptcy court lacked jurisdiction under *Stern v. Marshall*, 564 U.S. 462 (2011). Pls.' Opp. at 7–9.

Bankruptcy courts have jurisdiction to "hear and enter final judgments in 'all core proceedings under title 11.'" *Stern*, 564 U.S. at 474, quoting 28 U.S.C. § 157(b)(1). "[C]ore proceedings are those that arise in a bankruptcy case or under Title 11." *Id.* at 476. They "include, but are not limited to," sixteen different types of matters, such as the "allowance or disallowance of claims against the estate," as well as "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2). With respect to non-core claims, which are "otherwise related to a case under title 11," bankruptcy courts have statutory authority to hear the proceedings and "submit proposed findings of fact and conclusions of law to the district court." § 157(c)(1). The district court must then review the proposed findings and conclusions *de novo* and enter any final judgment. *Id.* The one statutory exception to this general rule is if all parties consent, the bankruptcy judge may "hear and determine and [] enter appropriate orders and judgments" as if the proceeding were core. § 157(c)(2).

In *Stern v. Marshall*, the Supreme Court determined that some claims labeled by Congress as "core" may not be adjudicated by a bankruptcy court in the manner described by statute. *See Stern*, 564 U.S. at 482; *see also* 28 U.S.C. § 157(b). It held that although counterclaims are generally labeled as "core" proceedings, bankruptcy judges do not have the constitutional authority under Article III to enter final judgments on certain counterclaims, such as those arising under state common law. *See Stern*, 564 U.S. at 482; *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172 (2014). These claims are now referred to as *Stern* claims. *See Stern*, 564 U.S. at 482; *Exec. Benefits Ins. Agency*, 134 S. Ct. at 2170 (2014) (describing a *Stern* claim as "a claim

designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter").

In *Executive Benefits Insurance Agency v. Arkison*, the Supreme Court further clarified that "when a bankruptcy court is presented with [a *Stern*] claim, the proper course is to issue proposed findings of fact and conclusions of law," just like the bankruptcy court would do if the claim was non-core. *Exec. Benefits*, 134 S. Ct. at 2171, 2173 (stating that the bankruptcy statute permits *Stern* claims to proceed as non-core proceedings); *see Stern*, 564 U.S at 502 (explaining that removal of certain state law counterclaims from core bankruptcy jurisdiction does not "meaningfully change[] the division of labor in the current statute" for bankruptcy courts). The Supreme Court went one step further in *Wellness International Network, Ltd. v. Sharif*, holding that parties may consent to the final adjudication of *Stern* claims by a bankruptcy court, just as they may do with regard to non-core claims. 135 S. Ct. 1932, 1944–46 (2015) ("[W]e conclude that allowing bankruptcy litigants to waive the right to Article III adjudication of *Stern* claims does not usurp the constitutional prerogatives of Article III courts.").

The D.C. Circuit has not ruled on whether *res judicata* applies to non-core claims if the parties did not raise those claims in a prior bankruptcy proceeding. But almost every Circuit that has addressed this issue has held that *res judicata* applies to claims that could have been brought in the bankruptcy proceeding, regardless of whether those claims would have been core or non-core. *See, e.g.*, *In re Int'l Nutronics*, 28 F.3d 965, 969–70 (9th Cir. 1994) (holding that non-core claims not raised in bankruptcy proceeding were barred by *res judicata* because they could have been asserted, which is enough for *res judicata* purposes, even if the bankruptcy court could not have rendered a final decision); *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1173 (10th Cir. 2000) (same); *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 197 (3d Cir. 1999) (same); *Sanders*

13

*Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483 (6th Cir. 1992) (same); *Sure-Snap Corp. v. State St. Bank & Tr. Co.*, 948 F.2d 869, 870–74 (2d Cir. 1991) (same).[6] These decisions finding *res judicata* applicable to non-core bankruptcy proceedings rest on the theory that the bankruptcy court could have rendered a final judgment on the non-core claims if the parties consented, and that even without the parties' consent, the bankruptcy court could have heard the non-core claims and developed proposed findings of fact and conclusions of law, and those claims would have then been decided by the district court. *See, e.g.*, *In re Int'l Nutronics*, 28 F.3d at 969; *see also* 28 U.S.C. § 157(c)(1)–(2). Thus, the weight of existing authority is in favor of applying *res judicata* to any non-core claim that could have been brought in the bankruptcy proceeding, and the Court will apply that reasoning here.

No court has yet addressed whether the logic behind these cases would also apply to *Stern* claims. However, the Supreme Court itself has said that its decision in *Stern* did not change the division of labor for bankruptcy courts, *Stern*, 564 U.S. at 502, and it has clarified that *Stern* claims are to be treated as non-core claims. *See Exec. Benefits*, 134 S. Ct. at 2173. So, absent explicit

---

6    Two circuits have held that *res judicata* does not apply if the claims would have been non-core proceedings. *See Barnett v. Stern*, 909 F.2d 973, 981–82 (7th Cir. 1990) (explaining that non-core claim not raised in bankruptcy proceeding was not barred by *res judicata* because *res judicata* can only bar previously unasserted core claims); *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 189 (5th Cir. 1990) (same). These cases, however, do "not take account of the fact that a non-core claim can be asserted in bankruptcy court, even though final decision will take place in district court." *In re Int'l Nutronics*, 28 F.3d at 970. Moreover, both Circuits have subsequently questioned these previous holdings. *See Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co.*, 649 F.3d 539, 550–51 (7th Cir. 2011) (stating that since *Barnett*, the Seventh Circuit "has continued to apply *res judicata* in the bankruptcy context without reference to the core/noncore distinction," but refusing to overturn the case because it could decide the current case on narrower grounds); *In re Baudoin*, 981 F.2d 736, 741 n.10 (5th Cir. 1993) (stating in a footnote that the Circuit is not sure that "bankruptcy jurisdiction must always be core in order to be 'competent' for *res judicata* purposes").

direction from the Circuit to the contrary, it appears appropriate to apply the rule that would apply to other non-core claims.[7]

Here, although the bankruptcy court could not have issued a final judgment on plaintiffs' non-core or *Stern* claims without the parties' consent, *see Wellness Int'l*, 135 S. Ct. at 1944–45, plaintiffs could have brought their current claims in the bankruptcy proceeding. *Stern*, 564 U.S. at 475. The bankruptcy court would have then issued a final judgment if the parties had consented, or it would have submitted proposed findings of fact and conclusions of law to the district court, and the district court would have rendered a final judgment as part of that proceeding. *See id.* at 475, 502; *Exec. Benefits*, 134 S. Ct. at 2171, 2173; 28 U.S.C. § 157(c)(1)–(2). The bankruptcy court was therefore a court of competent jurisdiction as to all of plaintiffs' claims, and this last element of *res judicata* is satisfied.

---

7    The Court does not need to decide whether plaintiffs' present claims would have been core or non-core proceedings because it is ultimately irrelevant to the application of *res judicata*. *See Plotner*, 224 F.3d at 1174 (explaining that the court did not have to decide whether claims were core or non-core because "that determination has no effect on the dispositive issue of res judicata"). However, it does appear that plaintiffs' claims would be categorized as either non-core claims or *Stern* claims. *See Stern*, 564 U.S. at 470–71 (finding a counterclaim for tortious interference was not a "core" claim and became a *Stern* claim); *Van Dorn Retail Mgmt., Inc. v. Sovran Bank/DC Nat'l, Inc.*, No. 90-2974, 1991 WL 222061, at *4 n.2 (D.D.C. Oct. 9, 1991) ("It has, however, been generally established that claims of breach of contract and conversion are considered 'non-core' proceedings, and thus removed from the bankruptcy court's jurisdiction.").

## CONCLUSION

The Court finds that plaintiffs' complaint is barred by the doctrine of *res judicata*, so it will grant defendants' motion to dismiss under Rule 12(b)(6). A separate order will issue.

/s/ Amy B. Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: November 1, 2017