UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
STUART MILLS DAVENPORT, *et al.*, )
)
    Plaintiffs, )
)
v. ) Civil Action No. 16-2445 (ABJ)
)
BABAK DJOURABCHI, *et al.* )
)
    Defendants. )
)

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion filed by plaintiffs Stuart Mills Davenport and Big Bear Café, LLC seeking reconsideration of the Court's November 1, 2017 order granting defendants' motion to dismiss. Pls.' Mot. for Recons. Pursuant to Fed. Rule of Civ. P. 59(e) & 60(b) [Dkt. # 16] ("Pls.' Mot.").[1] The Court previously ruled that plaintiffs' claims against defendants Babak Djourabchi and Monica Welt were precluded under the doctrine of *res judicata*, *Davenport v. Djourabchi*, 296 F. Supp. 3d 245, 248 (D.D.C. 2017), but it concludes here that reconsideration is warranted.

The doctrine of *res judicata* bars parties "from relitigating issues that were or could have been raised" in a previous action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980), citing *Cromwell v. Cty. of Sacramento*, 94 U.S. 351, 352 (1876). Under this principle, "a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C.

---

1     Defendants opposed the motion on November 29, 2017. Defs.' Mem. of P. & A. in Opp. to Pls.' Mot. [Dkt. # 17] ("Defs.' Opp."). And on December 6, 2017, plaintiffs filed a reply. Pls.' Reply P. & A. in Further Supp. of Pls.' Mot. [Dkt. # 18] ("Pls.' Reply).

Cir. 2006) (citations omitted). The Court found that all four elements of *res judicata* had been met in connection with prior bankruptcy proceedings, and that plaintiffs were therefore barred from bringing their civil suit. *See Davenport*, 296 F. Supp. 3d at 251–54.

Plaintiffs ask the Court to "reconsider whether the 'same claim' element of *res judicata* is met in this action." Pls.' Mot. at 4 & n.3. Pointing to authority they did not raise in connection with the motion to dismiss, plaintiffs contend that the Court "did not consider an intervening ruling of the United States Court of Appeals for the District of Columbia Circuit . . . demonstrating that Davenport's bankruptcy action was not the same claim as those brought by [p]laintiffs in this action." *Id.* at 3 (emphasis omitted). Further, they argue that the Court's decision "reflects clear error in concluding that [p]laintiffs 'could have brought their . . . claims in the prior bankruptcy proceeding,' when Bankr. Rules 3007(b) and 7001(1) specifically *prohibited* [p]laintiffs from bringing those state law claims." *Id.* at 5 (internal citation omitted) (emphasis in original).

Because plaintiffs were prohibited from bringing their state and common law claims for damages in the prior bankruptcy proceeding, their current claims do not constitute the same cause of action for *res judicata* purposes. Therefore, the Court will grant plaintiffs' motion.

**BACKGROUND**

The factual and procedural background of this case, the nature of plaintiffs' claims against defendants, and the basis for the Court's previous ruling are laid out in detail in the Court's decision, *see Davenport*, 296 F. Supp. 3d 245, so the Court will address the facts only briefly here.

Plaintiff Davenport is the operator and sole owner of Big Bear Café, LLC, a restaurant on the lower level of the multistory row-house where he and his family live. Am. Compl. [Dkt. # 9] ¶¶ 7–10. Defendants were Davenport's neighbors, *id.* ¶ 13, and they loaned him $80,000 in exchange for an executed Promissory Note for Business and Commercial Purposes.

*Id.* ¶ 14; Ex. 1 to Am. Compl. [Dkt. # 9-1] ("Note"). The loan was secured by Big Bear Café. *Id.* ¶¶ 16, 21; *see* Note; Ex. 2 to Am. Compl. [Dkt. # 9-2] ("Deed of Trust"). This case arises out of defendants' efforts to collect on the debt and the bankruptcy proceedings that followed.

On October 14, 2015, Davenport filed for Chapter 13 bankruptcy protection in the U.S. Bankruptcy Court for the District of Columbia to prevent a threatened foreclosure on his property by defendants. Am. Compl. ¶¶ 105–06. Defendants filed a proof of claim with the bankruptcy court, alleging that Davenport was in default on the Note and that he owed them $121,813.88. *Id.* ¶ 120. Davenport contested this allegation by filing an objection to the proof of claim. *Id.* ¶¶ 120–21. The bankruptcy court then held a trial to determine the amount due under the Note, and on July 21, 2016, it ruled that Davenport was not in default, but that he owed $53,557.10. *Id.* ¶¶ 122–23; Ex. 9 to Am. Compl. [Dkt. # 9-9] ("Bankr. Mem."); Ex. 10 to Am. Compl. [Dkt. # 9-10] ("Bankr. Order").

After the bankruptcy court established that Davenport was not in default on the Note, Davenport and the café filed this civil lawsuit against defendants. *See* Am. Compl.[2] They brought seven claims alleging that throughout the parties' interactions, defendants have harassed Davenport, and that plaintiffs have suffered as a result of defendants' misrepresentations regarding the Note. *See id.* ¶¶ 143–47, 156–57, 162, 176–77, 187–88, 193. Plaintiffs sought at least $150,000.00 in damages, in addition to punitive damages, and attorneys' fees. *Id.* at 30.

## STANDARD OF REVIEW

"Motions under Fed. R. Civ. P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of*

---

2   In December 2016, plaintiff Davenport filed a complaint in this Court against defendants, and he amended the complaint as of right on February 23, 2017, adding Big Bear Café, LLC as a second plaintiff. *See* Compl. [Dkt. # 1]; *see also* Am. Compl.

*Max S. Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001), citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004), quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).

A motion to alter or amend the judgment under Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008), quoting 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995). Rather, motions to alter or amend a judgment "are intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law." *Hammond v. Kempthorne*, 448 F. Supp. 2d 114, 118 (D.D.C. 2006), quoting *Indep. Petroleum Ass'n of Am. v. Babbit*, 178 F.R.D. 323, 324 (D.D.C. 1998).[3]

### ANALYSIS

Plaintiffs are only challenging the Court's previous conclusion that their current claims constitute the same cause of action as those brought in Davenport's bankruptcy case. "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002), quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984). "[I]t is the facts surrounding the transaction or occurrence which

---

3  Although plaintiffs also cite to Rule 60(b) in their motion, their arguments revolve around Rule 59(e) theories of relief. *See* Pls.' Mot. at 4–9. Further, plaintiffs' Rule 59(e) motion was filed well-within the twenty-eight day time period allotted for such motions. So, the Court sees no reason to evaluate plaintiffs' motion under Rule 60.

operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Page*, 729 F.2d at 820, quoting *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir. 1977). The D.C. Circuit has "embraced the *Restatement (Second) of Judgments'* pragmatic, transactional approach to determining what constitutes a cause of action," and has explained that the Restatement gives "weight to such considerations as whether the facts are related in time, space, origin, or motivation." *U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205, (D.C. Cir. 1985), quoting Restatement (Second) of Judgments § 23(2) (1982). The determination of whether two cases involve the same cause of action requires consideration of not only claims that were actually raised in prior litigation, but also matters that "could have been raised in that action." *Allen*, 449 U.S. at 94, citing *Cromwell*, 94 U.S. at 352.

Plaintiffs argue that their two cases do not constitute the same claim or cause of action because the relief they seek now was not available in the bankruptcy action. Pls.' Mot. at 5. To support their position, they insist that an intervening D.C. Circuit opinion held that "the transactional 'same nucleus' of facts test the Court applied here is *not* applicable where the second action seeks a remedy unavailable in the first action – money damages." *Id.* (emphasis in original), citing *Hurd v. District of Columbia Gov't*, 864 F.3d 671, 679–80 (D.C. Cir. 2017). They maintain that a monetary remedy was unavailable in the first proceeding because the bankruptcy rules prohibited Davenport from bringing state or common law damages claims in his contested matter. *Id.*

I. **The Court of Appeals' Decision in *Hurd***

While it is unclear if the Court of Appeals' decision in *Hurd* is an "intervening change to

5

controlling law" since the opinion predates this Court's opinion,[4] and it applied already-existing legal principles espoused by the Supreme Court, see Walsh v. Hagee, 316 F.R.D. 1, 2 (D.D.C. 2014) (holding that an intervening case decided on "well-established principles" did not constitute an "intervening change of controlling law"); see Hurd, 864 F.3d at 679–80 (citing mostly Supreme Court cases for its interpretation of the preclusive effect of the plaintiff's state court habeas proceeding on his federal section 1983 claim), the Court finds the case to be a useful clarification on when two cases constitute the same cause of action for purposes of res judicata.[5]

In Hurd, the Court of Appeals held that an inmate's section 1983 civil lawsuit was not barred by the doctrine of res judicata despite the fact that the inmate had previously brought a habeas proceeding in D.C. Superior Court challenging his confinement as a violation of procedural and substantive due process. 864 F.3d at 674–75, 679–80. In 2007, the Federal Bureau of Prisons released Michael Hurd from prison after he had served approximately thirteen months of a forty-two month sentence. Id. at 674. He believed that his motion for a sentence reduction had been granted, and he proceeded to participate in three-years of supervised release. Id. In 2011, Hurd

---

4  Indeed, the Hurd decision was issued approximately three months after briefing concluded on defendants' motion to dismiss, and three months before the Court issued its Memorandum Opinion.

5  While D.C. Circuit authority is binding on this Court, Hurd involved the preclusive effect of a state court judgment on a federal proceeding, which turns in part upon "concerns of comity and federalism," Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985), that are not relevant in determining the preclusive effect of a federal bankruptcy court proceeding on a federal district court action. And while the Court of Appeals never definitively addressed what law governed in Hurd, it appeared to interpret the doctrine of res judicata under District of Columbia law, which is not the applicable law in this case. See Taylor v. Sturgell, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law."); Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984) (concluding that the "preclusive effect in federal court of [the plaintiff's] state-court judgment is determined by [state] law"); Marrese, 470 U.S. at 380 (observing that the federal Full Faith and Credit Statute "directs a federal court to refer to the preclusion law of the State in which judgment was rendered").

pleaded guilty to possession of marijuana in D.C. Superior Court, and he was sentenced to serve three consecutive weekends in D.C. jail. *Id.* at 674–75. After the second weekend, the D.C. Department of Corrections disregarded the Superior Court order specifying Hurd's release, and instead kept him imprisoned for an additional twenty-seven months – apparently the remainder of his original sentence. *Id.* at 675. On November 16, 2011, he filed a habeas petition against the United States in D.C. Superior Court challenging his confinement as a violation of procedural and substantive due process. *Id.* The court denied his petition from the bench in July 2012, and even though Hurd appealed the decision, the appeal was dismissed as moot because it was not considered until after he had been released. *Id.*

Hurd then filed a damages action against the District of Columbia under 42 U.S.C. § 1983, again pursuing both procedural and substantive due process claims. *Hurd*, 864 F.3d at 675. The district court dismissed his substantive due process claim as precluded by the D.C. Superior Court's 2012 decision, but the D.C. Circuit reversed this decision. *Id.* The Court concluded that "the Superior Court's 2012 decision lacks the preclusive effect the district court perceived . . . because section 1983 claims cannot be joined in a habeas proceeding." *Id.*

The Court observed that the inquiry for assessing whether a claim is precluded by a prior judgment is based on the following questions: "(1) whether the claim was adjudicated finally in the first action; (2) whether the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding; and (3) whether the party against whom the plea of preclusion is asserted was a party or in privity with a party in the prior case." *Hurd*, 864 F.3d at 679, quoting *Patton v. Klein*, 746 A.2d 866, 870 (D.C. 1999). Thus, plaintiffs' suggestion that the *Hurd* Court created an exception to the transactional "same nucleus of facts" test, *see* Pls.'

Mot. at 5, is incorrect, since the Court recited the well-established set of considerations governing claim preclusion, and applied those principles to Hurd's case.

> On appeal, Hurd contends that his section 1983 damages claim was not the same as his habeas claim, because the damages claim was not and could not have been raised in the habeas proceeding. We agree. Preclusion is designed to limit a plaintiff to one bite at the apple, not to prevent even that single bite. It thus precludes later theories or pleas for relief arising out of the same claim only if they could have been asserted in the earlier case. As the Supreme Court has observed, "claim preclusion generally does not apply where 'the plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts.'"

*Hurd*, 864 F.3d at 679, quoting *Marrese*, 470 U.S. at 382.

The Court continued:

> Cases applying claim preclusion where a different amount of damages was available in the second action compared to the first can hardly support preclusion where *no* damages whatsoever were available in the first action. And it is far from clear that Hurd could have joined his damages claim with his habeas petition. Generally speaking, the Supreme Court has reserved habeas for those seeking release from confinement and section 1983 for those seeking other relief, such as damages.

*Id.* at 679 (citation omitted); *see also Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]here a plaintiff was precluded from recovering damages in the initial action by formal jurisdictional or statutory barriers, not by plaintiff's choice, a subsequent action for damages will not normally be barred by res judicata even where it arises from the same factual circumstances as the initial action.").

Relying on *Hurd*, plaintiffs ask the Court to "reconsider its 'same claim' finding in light of the different *remedies* available to Davenport in the bankruptcy proof of claim objection and to [p]laintiffs in this litigation." Pls.' Mot. at 6 (emphasis in original). They maintain that Bankruptcy Rule 3007(b) prohibited Davenport from filing claims seeking monetary relief in the contested action. *Id.* at 5, 7–8. The Court agrees that the *Hurd* opinion, in combination with plaintiffs'

current argument that the Bankruptcy Rules prohibited Davenport from bringing his damages claims in the contested action proceeding, requires this Court to reconsider its previous ruling.[6]

## II. The Impact of the Bankruptcy Rules

In a multi-party bankruptcy case, there are two different forms of process: "contested matters" and "adversary proceedings." *See* 10 Collier on Bankruptcy P. ¶ 9014.01 (16th ed. 2018). An objection to a proof of claim initiates a contested matter governed by Federal Rule of Bankruptcy Procedure 9014. *See* Fed. R. Bankr. P. 3007; Fed. R. Bankr. P. 9014; *see also* 10 Collier on Bankruptcy P. ¶ 9014.01 (listing types of contested matters). "Contested matters" are designed to adjudicate simple issues on an expedited basis and are therefore not governed by the full panoply of rules that pertain to federal civil actions. *See* 10 Collier on Bankruptcy P. § 9014.06; *see also* Fed. R. Bankr. P. 9014(c) (limiting the application of Part VII of the Federal Rules of Bankruptcy Procedure governing adversary proceedings, which incorporates the Federal

---

6 Defendants argue that plaintiffs' motion "should be summarily denied because [p]laintiffs are merely raising new legal arguments regarding Bankruptcy Rule 3007(b) that were available to them at the time of the dismissal briefing." Defs.' Opp. at 6. Defendants are correct about the omissions in plaintiffs' prior pleadings. In their opposition to defendants' motion to dismiss, plaintiffs argued that their new claims were not the same as the ones raised in the bankruptcy action for two reasons: (1) their claims did not satisfy the "transactional test"; and (2) allowing the claims to go forward would not impair the prior bankruptcy court judgment. *See* Pls.' Opp. to Defs.' Mot. [Dkt. # 12] at 11–12. Later in their opposition, plaintiffs did separately contend that "it would have been utterly impracticable for [p]laintiffs to bring their current claims" in the "narrow objection-to-claim proceeding." *Id.* at 18–19. But the only reason they gave was that the current claims "were contingent upon the bankruptcy court's resolution of [d]efendants' proof of claim." *Id.* at 19. Plaintiffs never argued that they were *prohibited* from bringing the claims because the bankruptcy rules prevented them from doing so, and they certainly had the opportunity to make such arguments. Because a motion to alter or amend the judgment under Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment," *Exxon Shipping Co. v. Baker*, 554 U.S. at 485 n.5 (2008), quoting 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995), the Court could deny plaintiffs' motion on these grounds. But given the effect of the Court's prior ruling on plaintiffs' claims and its conclusion that the Bankruptcy Rules require a different outcome, the Court will exercise its discretion to grant reconsideration.

Rules of Civil Procedure, to contested matters). Rather, they only involve motions practice and "reasonable notice and opportunity for a hearing." Fed. R. Bankr. P. 9014(a).

In comparison, "adversary proceedings" are governed by Part VII of the Federal Rules of Bankruptcy Procedure, which incorporates the Federal Rules of Civil Procedure. *See* Fed. R. Bankr. P. 7001. An adversary proceeding is commenced by filing a complaint and serving a copy of the complaint and the summons. *See* Fed. R. Bankr. P. 7001, 7003–04. Rule 7001 lists the types of actions that require an adversary proceeding, and Rule 7001(1) states that an action "to recover money or property" must be made in an adversary proceeding. Fed. R. Bankr. P. 7001(1).

Here, defendants filed a proof of claim against Davenport, and Davenport initiated a contested matter by filing an objection to the proof of claim. *See* Am. Compl. ¶¶ 120–21; Pls.' Mot. at 2. Plaintiffs argue that because Davenport initiated a contested action, Bankruptcy Rule 3007(b) prohibited him from seeking the kind of monetary damages that can be obtained in an adversary proceeding. Pl.'s Mot. at 7, citing Fed. R. Bankr. P. 3007(b). Thus, they argue that they could not have brought their claims seeking monetary damages in the bankruptcy proceeding, and that plaintiffs' claims in the civil action are not "the same claim" for *res judicata* purposes. Pls.' Mot. at 7; Pls.' Reply at 2. The Court agrees.

Bankruptcy Rule 3007, which governs objections to claims like the one at issue here, was amended in 2007. Subsection (a) previously provided in its final sentence:

> If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

9 Collier on Bankruptcy P. ¶ 3007.02 (16th ed. 2018). With the 2007 amendment, that sentence was replaced by subsection (b):

> A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding.

Fed. R. Bankr. P. 3007(b).

The Advisory Committee Notes concerning the amendment to Rule 3007 reiterate the difference in the relief available in the two types of proceedings.

> First, the amendment *prohibits* a party in interest from including in a claim objection a request for relief that requires an adversary proceeding. A party in interest may, however, include an objection to the allowance of a claim in an adversary proceeding. Unlike a contested matter, an adversary proceeding requires the service of a summons and complaint, which puts the defendant on notice of the potential for an affirmative recovery. Permitting the plaintiff in the adversary proceeding to include an objection to a claim would not unfairly surprise the defendant as might be the case if the action were brought as a contested matter that included an action to obtain relief of a kind specified in Rule 7001.
>
> The rule as amended does not require that a party include an objection to the allowance of a claim in an adversary proceeding. If a claim objection is filed separately from a related adversary proceeding, the court may consolidate the objection with the adversary proceeding under Rule 7042.

Fed. R. Bankr. P. 3007, Advisory Comm. Notes 2007 (emphasis added).

Thus, Rule 3007(b) and the Advisory Committee Notes make it clear that a contested matter initiated by the filing of an objection to a proof of claim and an adversary proceeding are distinct bankruptcy proceedings, and that certain demands for relief cannot be brought in a contested matter. Because Rule 7001(1) covers disputes "to recover money or property," Rule 3007(b) precludes a debtor from making those claims in a contested matter. Therefore, Davenport could not have brought his claims for damages when he contested defendants' proof of claim in the bankruptcy case.

Case law interpreting the interaction between the amended version of Bankruptcy Rule 3007(b) and Rule 7001 reinforces the Court's conclusion. For example, in *In re Donson*, a debtor filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, and her largest

11

creditor filed a proof of claim to which the debtor objected. 434 B.R. 471, 473–74 (Bankr. S.D. Tex. 2010). Her objections focused on whether the creditor's claims were non-dischargeable domestic support obligations. *Id.* The district court concluded that the debtor's "objections to [the creditor's] claims should not have been filed in her main bankruptcy case" because "[s]uch objections must be made in an adversary proceeding." *Id.* at 474–75. The court observed that a dispute regarding the dischargeability of a debt must be resolved in an adversary proceeding under Rule 7001(6), and that because Bankruptcy Rule 3007 was "substantially amended" in 2007, the rule now "precludes a debtor from objecting to a claim's dischargeability in the main bankruptcy case." *Id.* at 474–75; *see also* Fed. R. Bankr. P. 7001(6) ("The following are adversary proceedings: . . . a proceeding to determine the dischargeability of a debt."). Thus, a demand for relief falling under Rule 7001 could not be brought within the contested matter.[7]

At least one bankruptcy court has indicated that the interplay between Rules 3007(b) and 7001 has an impact on *res judicata* analysis. In *In re J.S. II, L.L.C.*, the debtors, consisting of a group of limited liability companies established to develop real estate, objected to a proof of claim filed by the creditor, another limited liability company. 389 B.R. 570, 572–74 (Bankr. N.D. Ill. 2008). The creditor had previously acted as the debtors' manger and agent, and it filed a third-party complaint for equitable subordination against the debtors' current managers. *Id.* The debtors

---

7     *See also In re MF Global Inc.*, 531 B.R. 424, 430 (Bankr. S.D.N.Y. 2015) (observing that due to the amendment to Bankruptcy Rule 3007, the Rule "no longer permits a claim objection to automatically convert to an adversary proceeding," and that "if . . . [an] [o]bjection seeks relief of the type that must be sought in an adversary proceeding, *such relief cannot be sought in a claim objection* and must instead be pursued in an adversary proceeding.") (emphasis added); *In re J.S. II, L.L.C.*, 389 B.R. 570 (Bankr. N.D. Ill. 2008) (overruling claim objection on the ground that the objection violated Bankruptcy Rule 3007(b) because Rules 3007(b) and 7001(8), together, mandated that claims for equitable subordination be pursued in an adversary proceeding and not in the contested matter).

and current managers filed motions to dismiss, arguing that the creditor's claims were barred by *res judicata*. *Id.*

In finding that the equitable subordination claim was not barred by *res judicata*, the bankruptcy court concluded that the creditor's current claims were "not based on the same core of operative facts" as the underlying proceeding dealing with the sale of the property in which the debtors had objected to the creditor's proof of claim. 389 B.R. at 586. The court held that the creditor "should not have been required to seek equitable subordination" in the prior proceeding "because equitable subordination must proceed via an adversary proceeding, as required under Fed. R. Bankr. P. 3007(b) and 7001(8)." *Id.* Further, the court observed that requiring the initiation of an adversary proceeding would have created an "impractical . . . delay" since "an adversary proceeding . . . takes longer to resolve because it entails discovery and motion practice." *Id.* at 586–87. Therefore, the debtors' motions to dismiss on *res judicata* grounds were denied. *Id.* at 587.

Defendants admit that "[a]dversary proceedings and contested matters are two different types of litigated proceedings," and that "Davenport's affirmative election to file and prosecute to completion a free-standing claim objection as a contested matter limited . . . what he could assert and obtain inside the contested matter." Defs.' Opp. at 13–14 & n.11. But they argue that nothing stopped Davenport from asserting the causes of action and monetary damages in an adversary proceeding and then seeking to consolidate his claim objection with it. *Id.* at 14. They contend that since Davenport had the ability to bring his claims by way of a different strategic path, this satisfies the question of whether plaintiffs "could have brought" their claims in the prior proceeding. *See id.*

While it is true that Davenport had this option, the first prong of the *res judicata* inquiry does not look to whether a claim could have been brought in the previous *court*; it examines if the second claim could have been brought in the first *proceeding*.[8] On this issue, the Court's ruling in *Hurd* is instructive.

In *Hurd*, the Court of Appeals acknowledged that it was unclear if "Hurd could have joined his damages claim with his habeas petition" in Superior Court. 864 F.3d at 679. But the Court did not find that possibility to be dispositive in any event. Rather, it focused on how the "Supreme Court has reserved habeas for those seeking release from confinement and section 1983 for those seeking other relief, such as damages," and concluded that, regardless of whether the claims could have been joined in one action, "the damages claim was not and could not have been raised in the habeas proceeding" itself. *Id.*

Similarly, contested matters are reserved for those seeking to resolve narrow issues quickly. And regardless of whether Davenport could have brought his state and common law claims in a separate adversary proceeding and then consolidated them with his claim objection, the damages claims could not have been raised in the claim objection proceeding itself. *See* Rule 3007 Advisory Comm. Notes (providing that Rule 3007(b) explicitly "prohibits a party in interest from including in a claim objection a request for relief that requires an adversary proceeding").

---

8    Whether the bankruptcy court would have been a court of competent jurisdiction to resolve all of plaintiffs' state law and common law claims has already been decided by the Court. *See Davenport*, 296 F. Supp. 3d at 254–56. And plaintiffs have not challenged the Court's finding on this element of *res judicata*.

14

Davenport, therefore, could not have brought his damages claims in the contested matter that was litigated in the bankruptcy court, and he is not barred by *res judicata* from bringing them now.[9]

## III. Purposes of *Res Judicata*

The Court's conclusion comports with the overall goals of *res judicata* as well. "[T]he doctrine is designed to conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum-shopping and piecemeal

---

9  Other courts have concluded that if a debtor could have objected to a proof of claim and brought an adversary proceeding in the bankruptcy court, subsequent claims arising from the same nucleus of facts are barred by *res judicata*. *See, e.g.*, *Covert v. LVNV Funding, LLC*, 779 F.3d 242, 247–48 (4th Cir. 2015) (holding that debtors who do not object to proofs of claim during their bankruptcy proceeding are precluded from later litigating the subject matter of those claims); *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 491–92 (D.C. Cir. 2009) (affirming district court's conclusion that *res judicata* precluded subsequent malpractice claims against law firm that represented plaintiff in underlying bankruptcy case because plaintiff could have asserted a defense against the fee application, the bankruptcy judge specifically asked plaintiff if it was withholding any further claims, and the bankruptcy court noted that failure to bring any malpractice claims would bar them from bringing them in the future); *Grausz v. Englander*, 321 F.3d 467, 474 (4th Cir. 2003) (concluding that plaintiff had an effective opportunity to litigate his malpractice claim because he "could have objected" to the law firm's fee application in the bankruptcy case "and included with his objection a claim for affirmative relief on account of the firm's alleged malpractice," and "the [contested] matter would have become an adversary proceeding"); *In re Intelogic Trace, Inc.*, 200 F.3d 382, 389 (5th Cir. 2000) (barring subsequent malpractice claims because plaintiff could have "objected to the fee application and included with its objection a claim for affirmative relief on account of alleged malpractice, [and the] matter would have become an adversary proceeding"); *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 529 (9th Cir. 1998) (holding that a debtor's failure to object to a creditor's proof of claim barred debtor's subsequent state court action against creditor based on same nucleus of facts).
However, these decisions are distinguishable for several reasons. First, they all hinge on the fact that the plaintiffs never asserted an objection within the contested matter when they had the opportunity to do so. Here, Davenport did object to the proof of claim, and he litigated the narrow issue before the bankruptcy court to completion. Second, many of the cases cited above barred subsequent malpractice claims partially because, in awarding fees to attorneys in the bankruptcy court, the bankruptcy judge had implicitly found that the attorney's services were acceptable so any litigation of attorneys work should have been brought in the bankruptcy case. Here, the bankruptcy court only was asked to determine the amount of money due on the note; no evaluation of the legitimacy of the foreclosure or of defendants' actions took place. And finally, almost all of the decisions applied Bankruptcy Rule 3007(b) before it was amended to make it clear that certain demands for affirmative relief cannot be brought within a contested matter.

15

litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981). Barring claims through the use of *res judicata* should also "relieve parties of the cost and vexation of multiple lawsuits." *Allen*, 449 U.S. at 94, citing *Montana v. United States*, 440 U.S. 147, 153–54 (1979); *see also Clark-Cowlitz Joint Operating Agency v. FERC*, 775 F.2d 366, 373 (D.C. Cir. 1985) (observing that the purpose of both claim and issue preclusion is "protection of litigants from the vexation and expense of repetitious litigation, protection of the courts from the burden of unnecessary litigation, promotion of respect for the judicial process and confidence in the conclusiveness of judicial decision-making, avoidance of disconcertingly inconsistent results, and securing the peace and repose of society"), *rehearing granted, judgment vacated by* 787 F.2d 674 (D.C. Cir. 1986).

These concerns underlay the Court's original decision, but they apply in unique ways in the particular context in which they arise here. Davenport's case was filed under Chapter 13 of the Bankruptcy Code and his objective was to obtain confirmation of a plan to make payments to the Chapter 13 trustee, who, in turn, would make distributions to creditors as directed by the plan. *See In re Davenport*, Case No. 1:15-cv-540 (Bankr. D.D.C. 2015). The bankruptcy court could not determine the amount owed to creditors Djourabchi and Welt until the objection to the proof of claim had been decided. *See id.*, Order Confirming Plan [Dkt. # 44].[10] Thus, it was important

---

10   The court's order stated:

>   1. Once the objection to the claim of Babak Djourabchi and Monica Welt is decided, the payments to them under the plan shall be based on the court's determination of the amount owed them as of the date of entry of this order confirming the debtor's plan.
>
>   2. Until the objection to claim is decided, the trustee shall make monthly distributions to Babak Djourabchi and Monica Welt equal in amount to (or exceeding) the minimum monthly payment due them under the plan based on the amount owed them as of the date of entry of this order pursuant to their proof of claim (as though no objection to claim had been filed) but such payments in the aggregate shall not exceed the $52,000 amount the debtor concedes is owed on that claim.

16

to all parties that there be a relatively prompt adjudication of Davenport's objection to the claim so that the amount owed to them would be fixed for purposes of distributions under the plan. Requiring Davenport to initiate an adversary proceeding to resolve other issues at that time would have complicated matters and created an unnecessary delay in proceedings, neither of which are goals of the doctrine of *res judicata*. *See In re J.S. II, LLC*, 389 B.R. at 586–87.[11] Litigating the limited issue of what amount was due on the note enabled the bankruptcy court to efficiently decide the matter that needed to be resolved while also preserving the judicial resources of the bankruptcy court.

## CONCLUSION

*Res judicata* "does not bar a litigant from doing in the present what he had no opportunity to do in the past." *Drake*, 291 F.3d at 67. Because plaintiffs could not bring their state and common law claims for damages within the claim objection proceeding in the bankruptcy court, they are not precluded from bringing those claims in the district court now.

Therefore, plaintiffs' motion for reconsideration [Dkt. # 16] is GRANTED.

---

11  Moreover, Davenport was not compelled to raise his claims during the contested matter. Federal Rule of Bankruptcy Procedure 9014, which governs contested matters, specifically provides that Federal Rules of Bankruptcy procedure 7008 and 7013 do not apply to contested matters. Rule 7008 makes applicable Federal Rule of Civil Procedure 8(c)(1) to adversary proceedings, which requires a party to bring affirmative defenses. And Rule 7013 makes applicable Federal Rule of Civil Procedure 13(a) regarding compulsory counterclaims. By excluding those rules, Davenport was not required to raise any affirmative defenses or compulsory counterclaims within the contested matter. *See D-1 Enters., Inc. v. Commercial State Bank*, 864 F.2d 36, 40 (5th Cir. 1989) (concluding that *res judicata* did not bar the debtor from bringing fraud claims, and observing that it would be "odd indeed for [the court] to hold that the debtor must assert all related claims in a 'contested matter' . . . to which the compulsory counterclaim rules do not even apply"); *In re Worldwide Wholesale Lumber, Inc.*, 372 B.R. 796, 809 (Bankr. D. S.C. 2007) (concluding that the trustee's causes of action were not barred by *res judicata* because they could not have been raised in the prior contested matter since they were matters that had to be raised in an adversary proceeding, and because the trustee was not compelled to raise the claims in contested action because of the inapplicability of Rule 7013).

The parties are ORDERED to meet, confer, and file a Joint Report pursuant to Local Rule 16.3 by June 27, 2018.

**SO ORDERED**.

　　　　　　　　　　　　　　　　　　/s/ Amy B. Jackson
　　　　　　　　　　　　　　　　　　AMY BERMAN JACKSON
　　　　　　　　　　　　　　　　　　United States District Judge

DATE: June 11, 2018