## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ ) | |
| STUART MILLS DAVENPORT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-2445 (ABJ) |
| ) | |
| BABAK DJOURABCHI, *et al.* ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## <u>MEMORANDUM OPINION</u>

On May 17, 2021, defendants moved for summary judgment in this case. *See* Defs.' Mot. for Summ. J. [Dkt. # 55] ("Defs.' Mot."). Plaintiff opposed defendants' motion and filed his own cross motion for partial summary judgment on June 14, 2021. *See* Pl.'s Mot. for Partial Summ. J. [Dkt. # 57] ("Pl.'s Mot."). The motions are now fully briefed. *See* Reply Mem. of P. & A. in Further Supp. of Defs.' Mot. and in Opp. to Pl.'s Mot. [Dkt. # 60] ("Defs.' Reply"); Pl.'s Reply Mem. of P. & A. in Further Supp. of Pl.'s Mot. [Dkt. # 62] ("Pl.'s Reply").

Plaintiff put it best in the introduction to his motion: "Multi-year bankruptcy proceedings and long-running federal court litigation all over an $80,000 promissory note (the "Note"). It is hard to believe that a neighbor lending another neighbor such a small sum has spawned all of this." Pl.'s Mot. at 1.

The Court cannot quarrel with that, given the amount of time and effort expended by the parties and two courts to resolve a dispute over a relatively small, ill-advised loan and a foreclosure that never came to pass. And in the end, it is the fact that this saga has already been the subject of court proceedings that governs this Court's decision; because plaintiff's claims are barred by *res judicata*, his motion will be **DENIED** and defendants' motion will be **GRANTED**.

**BACKGROUND**

Plaintiff Stuart Mills Davenport is the operator and sole owner of Big Bear Café, LLC ("Big Bear"),[1] a restaurant on the lower level of a multistory row-house (the "Property").  Defs.' Statement of Undisputed Material Facts [Dkt. # 55-3] ("Defs.' SOF") ¶¶ 6, 8.[2]  Defendants Babak Djourabchi and Monica Welt are a married couple who were Davenport's neighbors in 2006. Defs.' SOF ¶ 10.  In September 2006, defendants loaned Davenport $80,000, and in turn, he executed a Promissory Note for Business and Commercial Purposes.  Defs.' SOF ¶ 16; *see* Ex. 15 to Defs'. Mot. [Dkt. # 56-15] ("Note").  This case arises out of defendants' efforts to collect on the debt and the bankruptcy proceedings that followed.

**Initial payments on the Note**

The Note established a maturity date of September 22, 2016, and the loan was secured by a second position lien on the property.[3]  *See* Defs.' SOF ¶ 16; *see also* Note ¶ 1; Ex. 2 to Am. Compl. [Dkt. # 9-2] ("Deed of Trust").  The parties agree that under the Note, plaintiff was required to make $700.00 interest-only payments on the first calendar day of each month.  Defs.' SOF ¶ 16; Pl.'s Additional Statement of Undisputed Material Facts [Dkt. # 57-2] ("Pl.'s SOF") ¶ 1.  "If plaintiff failed to make a payment when due and that failure continued for four calendar days, Defendants could collect a compound penalty of $10 per day."  Defs.' SOF ¶ 16; *see also* Note ¶

---

1    Originally, Big Bear was a co-plaintiff in this case, but the parties submitted a stipulation voluntarily dismissing Big Bear as a party on August 26, 2019.  Stipulation of Voluntary Dismissal of Pl. Big Bear Café, LLC [Dkt. # 33]; *see also* Order [Dkt. # 34] (granting dismissal of Big Bear as a party).

2    Facts are undisputed unless otherwise noted.

3    On April 14, 2006, plaintiff obtained a mortgage loan from Interbay Funding, LLC ("Interbay") for $260,000 secured by a first lien on the Property and an assignment of leases and rents.  Defs.' SOF ¶ 9.

5(b)(iii).  Defendants assert that plaintiff "executed and delivered to defendants" the Note, and plaintiff responds that "[d]efendants – both lawyers – drafted the Note and chose the form of the Deed of Trust, which is a Fannie Mae/Freddie Mac form for a single-family residential mortgage." Pl.'s Resp. to Defs.' SOF [Dkt # 57-3] ¶ 16. This is not inconsistent with defendants' assertion that plaintiff executed it, though.

Upon execution of the Note, plaintiff paid defendants $207.00 to cover the interest that would accrue between the Note's execution on September 22, 2006, and October 1, 2006.  Pl.'s SOF ¶ 4.  In fact, the correct amount should have been $209.97.  *Id.* ¶ 5.  That discrepancy – which amounted to less than three dollars and was apparently inadvertent, *see* Defs.' Resp. to Pl.'s SOF [Dkt. # 60-2] ¶ 4 – became the center of one of the first disputes: defendants argued in the bankruptcy court that the $2.97 discrepancy meant that plaintiff had been in default since the inception of the note, and some of their later collection efforts were based on this assertion.

In December 2007, Interbay, the first lien holder of the Property, attempted to foreclose on the Property, but plaintiff avoided that foreclosure by bringing the obligation current.   Defs.' SOF ¶ 23.  In March 2008, plaintiff alleges, "[d]efendants came to Davenport's home, threatened to sell the loan to [a] more aggressive lender, and threatened foreclosure."  Ex. 22 to Defs.' Mot. at 5; *see also* Pl.'s SOF ¶ 7.  On September 1, 2008, plaintiff began paying $1,000 a month, $300 more than the required $700 payments to cover interest.  Defs.' SOF ¶ 26.  Plaintiff states that he made these extra payments because he was "[i]ntimidated and afraid that the Defendants would foreclose." Pl.'s SOF ¶ 7.  Eventually, "[a] dispute arose between the parties as to whether the $300 payments

were properly attributable to accrued (and accruing) arrears or a credit against principal."  Defs.'
Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 55-2] ("Defs.' Mem.") at 6.[4]

Plaintiff alleges that throughout June of 2009, defendants repeatedly demanded that he pay
the loan off in full and threatened foreclosure.  *See* Ex. 22 to Defs.' Mot. at 6.  And in August
2009, defendants notified plaintiff again that they believed the Note was in default and demanded
that he meet with them to pay the loan "in full" within less than two hours.  Pl.'s SOF ¶ 9; *see also*
Ex. 11 to Am. Compl. [Dkt. # 9-11] (1:46 p.m. e-mail from Djourabchi stating "Please coordinate
a time to meet with me today before 3:30PM, so that this loan could be paid in full.  I need to meet
before 4:00PM in order to make sure that the check written is cashed by your bank and deposited
in the proper account.").

### First bankruptcy proceeding initiated

Plaintiff filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court
for the District of Columbia on September 2, 2009.  Pl.'s SOF ¶ 10, citing Ex. 42 to Defs.' Mot.
(petition initiating bankruptcy case number 09-772).  Plaintiff made the filing "because he and his
wife separated and, with the change in finances, he missed a payment on the mortgage" for another
home that is unrelated to this litigation.  Defs.' SOF ¶ 34.  Each party cites filings submitted to the
bankruptcy court in that litigation to inform the Court of positions the other advanced at the time;
for example, defendants state, "Plaintiff listed Defendants' claim under the Note as $80,000 (with
no reduction for the $300 additional payments made)," Defs.' SOF ¶ 36, while plaintiff states,
"Defendants filed a proof of claim on October 19, 2009 stating under oath that Davenport owed

---

4       Later in the month of September, Interbay threatened to foreclose again, but plaintiff
"entered into a forbearance agreement" and Interbay did not foreclose.  Defs.' SOF ¶ 27.

$80,000 on the Note and that there were no arrearages as of the bankruptcy filing." Pl.'s SOF ¶ 11.[5]

### Additional disputes

On October 21, 2013, plaintiff's counsel "sent a letter to Defendants' counsel requesting a payoff figure good through December 31, 2013 and asked if the 'additional $300 payments are being applied to principal.'" Defs.' SOF ¶ 42; *see also* Pl.'s SOF ¶ 15. On November 20, 2013, defendants' counsel replied that the $300 payments had "been applied to late fees" and the balance due was $80,000 in principal and $3,450 in legal fees. Defs.' SOF ¶ 43 (internal quotations omitted); Pl.'s SOF ¶ 15. Defendants contend that the figure provided was an inaccurate summary of their position because it did not include outstanding arrears, but do not contest that their lawyer sent the letter. Defs.' SOF ¶ 43.

Plaintiff "generally continued" making $1,000 monthly payments to defendants until November 2014. Pl.'s SOF ¶ 13; Defs.' SOF ¶ 38.

By March 2015, defendants explicitly alerted plaintiff to their theory that he had been in default since the inception of the note, because his initial payment was $2.97 short. Pl.'s SOF ¶ 16.[6] Therefore, they maintained, the $300 monthly payments he had been making only served to cover the late fees of $10 a day. Pl.'s SOF ¶ 16. This led to another round of the parties' submitting conflicting calculations of the balance. On May 12, 2015, plaintiff's counsel asserted that the outstanding balance of the Note was $56,510. Defs.' SOF ¶ 48. At that point:

---

5    Both plaintiff and defendants dispute whether these respective positions were binding legal positions, but they do not dispute the representations about what the documents say.

6    Defendants argue that they provided verbal notice of this position earlier than March 2015, but everyone agrees that the theory was communicated by that time. Defs.' Resp. to Pl.'s SOF ¶ 16.

> [w]ithout prior notice, on May 27, 2015, Plaintiff deposited a check into Defendants' bank account for $60,980, dated May 15, 2015 and noted "loan paid in full."  Defendants (through counsel) advised Plaintiff that the check was rejected and the funds returned, and offered to provide a payoff quote in advance of maturity.

Defs.' SOF ¶ 49.  On June 30, 2015, defendants' counsel "provided Plaintiff a payoff quote . . . in the amount of $114,568.07."  Defs.' SOF ¶ 50.

On September 11, 2015, defendants initiated foreclosure proceedings against the Property with a public auction scheduled for October 20, 2015.  Defs.' SOF ¶ 52.[7]

### Second bankruptcy proceeding initiated

On October 14, 2015, plaintiff filed a second Chapter 13 bankruptcy petition.  Pl.'s SOF ¶ 18; Defs.' SOF ¶ 53; *see also* Ex. 69 to Defs.' Mot. (petition initiating bankruptcy case number 15-540).  Plaintiff alleges that he filed for bankruptcy again – at least in part – in response to the foreclosure notice.  Pl.'s SOF ¶ 18.  Defendants filed a proof of claim with the bankruptcy court, alleging that Davenport owed them $121,813.88 under the Note.  Mem. Decision RE Debtor's Mot. to Modify Plan and Secured Creditors' App. For Allowance of Postpetition Fees and Expenses, Ex. 76 to Defs.' Mem. [Dkt. # 56-76] ("November 2020 Bankruptcy Order") at 20.  This proceeding thus became a contested matter.  *See* 10 Collier on Bankruptcy P. ¶ 9014.01.

After holding a trial to determine the amount due under the Note, the bankruptcy court issued an opinion on July 21, 2016 that addressed some of the parties' disputes.  It determined that plaintiff made a $700.00 payment on October 1, 2006, which was one month early because there

---

[7]     Plaintiff also alleges that on October 21, 2015, defendant Djourabchi came to his restaurant, Big Bear, harassed him about the outstanding loan, and refused to leave.  Pl.'s Resp. to Defs.' SOF ¶ 89; Am. Compl. ¶ 161.  Plaintiff complains that on or around August 19, 2014 and October 30, 2015, someone filed anonymous complaints about Big Bear with the D.C. Health Department, and he posits that the anonymous complaints were filed by defendants.  Defs.' SOF ¶ 90.  Plaintiff also alleges that defendants listed his row-house – the "adjacent property" to Big Bear, Am. Compl. ¶ 161 – for sale on Zillow.com in October 2015.  Defs.' SOF ¶ 91.

were no indications in the Note that interest was to be paid in advance; therefore, the supposed $2.97 in arrears was paid off at that time.  Mem. Decision RE Debtor's Objection to the Proof of Claim Filed by Babak Djourabchi and Monica Welt, Ex. 71 to Defs.' Mem. [Dkt. # 56-71] ("July 2016 Bankruptcy Order") at 21 n.1.  In light of that finding, the bankruptcy court also determined that the $300 monthly payments were not to satisfy late fees, but they constituted a "credit for future interest payments (or for prepayment of the debt) in the amount of $26,422.90."  *Id.* at 21.

### Plaintiff files the lawsuit before this Court

On December 15, 2016, plaintiff filed the original complaint in this lawsuit.  Compl. [Dkt. # 1].

This Court dismissed plaintiff's complaint on November 1, 2017, "conclud[ing] that all seven of plaintiffs' counts are barred by *res judicata*" in light of the July 2016 Bankruptcy Order issued in bankruptcy case 15-540, the overlapping nature of the factual allegations, and the general ability of the bankruptcy court to consider and decide on plaintiff's contentions.  *See generally Davenport v. Djourabchi*, 296 F. Supp. 3d 245 (D.D.C. 2017) ("*Davenport I*").  Shortly thereafter, plaintiffs filed a motion for reconsideration of this decision.  *See* Pls.' Mot. for Reconsideration Pursuant to Fed. R. Civ. P. 59(e) & 60(b) [Dkt. # 16] ("Pls.' Reconsideration Mot.").

### Plaintiff initiates an adversary proceeding within bankruptcy case 15-540

While the motion for reconsideration was still pending, "Plaintiff initiated an adversary proceeding . . . by filing a Complaint for Failure to Release Deed of Trust and for Declaratory Judgment against Defendants" in the bankruptcy court on January 26, 2018.  Def.'s SOF ¶ 60; *see also* Ex. 75 to Def.'s Mot. [Dkt. # 56-75] ("2018 Adversary Compl."). The adversary complaint included three counts:

- Count I, "Failure to Release Deed of Trust (D.C. Code § 42-818.02)," alleged that "[b]y attempting to foreclose on the Property via the Deed of

Trust and by filing a Proof of Claim asserting the entire amount due under the Note was immediately due as an arrearage, Creditors accelerated the Note." 2018 Adversary Compl. ¶ 38. Defendants' later failure, in 2017, to accept an attempted pay-off of the full "amount due under the Note," 2018 Adversary Compl. ¶¶ 39–41, thus allegedly violated D.C. Code § 42-818.02.

- Count II, "Declaratory Judgment—Extinguishment of Deed of Trust," complained of defendants "demand[]" that Davenport pay the Note in full, early, "despite there being no term in the Note, Deed of Trust, or any other agreement between the Parties justifying such a demand." 2018 Adversary Compl. ¶ 46. "Creditors provided Davenport with incorrect payoff calculations with specific payoff dates in both November 2013 and June 2015." 2018 Adversary Compl. ¶ 51. Plaintiff "tendered a lump sum payment of $60,980.00 to Creditors as payment in full of the Note by depositing that sum into Creditors' bank account" on May 27, 2015, but "Creditors wrongly rejected the payment to Davenport and returned the payment to Davenport in the form of an official bank check." 2018 Adversary Compl. ¶¶ 52, 56.

- Count III, "Declaratory Judgment—Attorneys' Fees," asked for the bankruptcy court to determine that claims for attorneys' fees were barred by *res judicata* because defendants had not raised that claim in front of this Court. 2018 Adversary Compl. ¶ 77.

**This Court reconsiders the *res judicata* issue**

After plaintiff moved for reconsideration,[8] the Court determined on June 11, 2018 that the district court action was not barred in its entirety by *res judicata* because the Chapter 13 petition filed on October 14, 2015 in bankruptcy case 15-540 was a contested action, rather than an adversary proceeding. *Davenport v. Djourabchi*, 316 F. Supp. 3d 58, 61 (D.D.C. 2018) ("*Davenport II*"). The Court found that the bankruptcy rules surrounding contested actions "prohibited [plaintiffs] from bringing their state and common law claims for damages in the prior bankruptcy proceeding, [so] their current claims [did] not constitute the same cause of action

---

8    The motion for reconsideration was filed on November 15, 2017, before the adversary proceeding was initiated. *See* Pls.' Reconsideration Mot.

for *res judicata* purposes." *Id.* The Court noted in its opinion that although plaintiff could have initiated an adversary proceeding, he stated in his motion that he had not done so, *see* Pls.' Reconsideration Mot. at 2 ("At no point did Davenport institute an adversary proceeding against Defendants," "[a]t no point did this contested action become an adversary proceeding under bankruptcy procedure."), and it observed "[r]equiring Davenport to initiate an adversary proceeding to resolve other issues at that time would have complicated matters and created an unnecessary delay in proceedings, neither of which are goals of the doctrine of *res judicata*." *Id.* at 69–70. Neither party bothered to inform the Court that an adversary proceeding was pending by that point.

### Renewed motion to dismiss

On June 25, 2018, defendants moved again to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Defs.' Renewed Mot. to Dismiss Am. Compl. [Dkt. # 20]. In an oral ruling on March 1, 2019, the Court granted the motion with regard to Counts I, IV, V, and VI, but denied the motion to dismiss Counts II and VII. *See* Min. Entry (Mar. 1, 2019); Tr. of Proceedings for Hr'g held 3/1/2019 [Dkt. # 23]. The Court also found that plaintiff Big Bear must be dismissed from Count III, but the motion was denied as to plaintiff Davenport. Min. Entry (Mar. 1, 2019). After Big Bear was dismissed from the case, *see* supra n.1, only Count II and Count III remained.

### Ongoing bankruptcy proceedings

The contested proceeding – or what the bankruptcy judge called the "main case" – in bankruptcy case number 15-540 moved forward while the adversary complaint was pending, and in November of 2020, after two days of trial, the bankruptcy court issued another decision. *See* November 2020 Bankruptcy Order at 1, 23–24. This 130-page order "addresse[d] Davenport's

Motion to Modify Chapter 13 Plan After Confirmation and the Application of Secured Creditors Babak Djourabchi and Monica Welt, for Allowance and Payment of Interest, Costs, Fees and Other Expenses Due on Secured Note." *Id.* at 1–2 (citations omitted). The bankruptcy court granted Davenport's motion to modify his payment plan on the Note, and it granted defendants' motion for attorney's fees and expenses under the terms of the Note in part. *Id.* at 5–6. But in doing so, the bankruptcy court also noted that "the fee and expense amounts . . . are in large part unreasonable." *Id.* The bankruptcy court also identified the issues its opinion did not reach, such as: whether defendants could recover attorneys' fees for their efforts in defending the case in front of this Court, *id.* at 128; whether defendants had a right to initiate foreclosure, *id.* at 47 n.23; and whether, if the foreclosure was determined to be wrongful, any previous award of attorneys' fees should count as damages in the district court case. *Id.* at 60–61. However, in its ruling with respect to the reasonableness of the requested fees, the bankruptcy court did discuss and make findings about many of the underlying events, such as whether defendants had rejected the $60,980 in good faith, *id.* at 76, and whether defendants properly accelerated the debt prior to plaintiff's tendering of that check. *Id.* at 69.

After making those findings, the bankruptcy court dismissed counts I and II of the adversary complaint on January 5, 2021; plaintiff agreed that the counts were properly dismissed. Order RE Effect of Decision in Main Case and RE Mot. to Dismiss Counterclaim, Ex. 77 to Defs.' Mot. [Dkt. # 56-77] at 2 ("The parties are in agreement that Counts I and II should be dismissed."). Count III was also dismissed in part as unripe, *id.* at 4 ("it is premature to address fees and expenses incurred in the civil action until that civil action is concluded. Accordingly, this part of Count III will not go forward."), and the rest of Count III was dismissed on May 11, 2021. Judgment, Ex. 78 to Defs.' Mot. [Dkt. # 56-78] at 1, 4 ("The *Memorandum Decision* of this date addressed the

remaining claims in this adversary proceeding."  "[T]his Judgment disposes of all claims herein, and the Clerk may treat the adjudication of the claims herein as concluded.").

Defendants did not appeal the bankruptcy court's decisions.  Pl.'s SOF ¶ 22.  However, plaintiff did appeal the judgment disposing of the final remaining claims in the adversary proceeding to the United States District Court.  Pl.'s Mot. at 15; *see also* App. I to Defs.' Reply [Dkt. # 60-1] at 3–4.

### Remaining counts in the case before this Court

Only Counts II and III remain for purposes of the pending cross motions for summary judgment.

Count II alleges breach of contract, stating that "[t]he terms of the Note authorized a foreclosure on the Property only if Davenport was in default," while "[t]he terms of the Deed of Trust authorized a foreclosure on the Property only if Davenport was in default of the Note."  Am. Compl. ¶¶ 150–51.  "Defendants materially breached the Note and Deed of Trust by instigating foreclosure proceedings when Davenport was not, and had never been, in default of the Note."  Am. Compl. ¶ 152.  Plaintiff adds that defendants' actions in (1) making plaintiff pay an extra $300 a month; (2) refusing to provide a pay-off amount upon request; and (3) refusing to accept an attempted payoff on May 27, 2015, violated the duty of good faith and fair dealing and/or constituted a breach of contract.  Compl. ¶¶ 153–55.

Count III alleges that defendants violated D.C. Code § 28-3301, *et seq.*, by disparaging plaintiff's business through false or misleading representations of material facts.  Am. Compl. ¶¶ 158–61.  The actions complained of in this count include misrepresentations of fact related to "falsely claiming Davenport owed arrearages on the Note and instituting foreclosure proceedings against the Property," as well as "harassing Davenport at his place of work . . . , 'anonymously'

complaining to the health department, spreading rumors about Big Bear's closure, and/or falsely listing Davenport's adjacent property as for sale on Zillow."  Am. Compl. ¶¶ 160–61.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion."  *Sherwood v. Wash. Post*,

871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989) (alteration in original), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982).  In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party."  *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## ANALYSIS

The first issue to address is defendants' contention that Counts II and III are both barred by *res judicata*.  Defs.' Mem. at 15–21.

The doctrine of *res judicata*, also referred to as claim preclusion, bars parties "from relitigating issues that were or could have been raised" in a previous action.  *Allen v. McCurry*, 449 U.S. 90, 94 (1980), citing *Cromwell v. Cty. of Sacramento*, 94 U.S. 351, 352 (1876).  Under this principle, "a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction."  *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) (citations omitted).[9]

### I.      Same cause of action

"Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'"  *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002), quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984).  "[I]t is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies."  *Page*, 729 F.2d at 820, quoting *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir. 1977).  The D.C. Circuit has "embraced the *Restatement (Second) of Judgments'*

---

9      Defendants' motion also makes related, and sometimes intertwined, arguments about collateral estoppel, or issue preclusion.  Because the Court finds that claim preclusion applies, there is no need to reach the issue preclusion arguments.

pragmatic, transactional approach to determining what constitutes a cause of action," and has explained that the Restatement gives "weight to such considerations as whether the facts are related in time, space, origin, or motivation." *U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205, (D.C. Cir. 1985), quoting Restatement (Second) of Judgments § 23(2) (1982).

There can be no serious dispute that the proceedings in the bankruptcy court and this court have arisen out of the same set of facts and circumstances. This Court has previously noted that the bankruptcy proceedings "arise from the same nucleus of facts," as "[b]oth disputes involve the interpretation and enforcement of the Note, Davenport's payments under the Note, and defendants' attempts to foreclose on the property." *Davenport I*, 296 F. Supp. 3d at 251–53. And that continues to be true. In fact, plaintiff effectively adopted this position in his own adversary complaint; in Count III, he asked that defendants' failure to raise attorneys' fees as an issue in this Court be given preclusive effect in the bankruptcy proceeding, implicitly arguing that there was indeed a common nucleus of facts. *See* 2018 Adversary Compl. ¶ 77. Plaintiff states that "Counts 2 and 3 of the First Amended Complaint primarily raise a simple issue: whether Defendants' attempt to foreclose on the Property in 2015 despite Davenport not being in default was wrongful, and whether they treated Davenport fairly under the contract when attempting to foreclose." Pl.'s Mot. at 19. That same event is discussed extensively in the adversary case. *See, e.g.*, 2018 Adversary Compl. ¶ 16 ("Despite the fact that Davenport was not then currently, and had never been, in default of the Note, in September 2015, Defendants attempted to foreclose on the Property."); ¶ 18 (plaintiff filed the second bankruptcy case "to stay the foreclosure sale"); ¶ 38 (Count I was about the "attempt[] to foreclose on the Property"); ¶ 77 (embracing that the two actions have the same nucleus of facts in asserting that *res judicata* applied towards defendants' potential claim for attorneys' fees). Other factual allegations overlap, as well, including the refusal

to accept the attempted pay-off in May 2015, which is the subject of paragraphs 52–56 within Count II of the 2018 Adversary Compl.

Moreover, the determination of whether two cases involve the same cause of action for *res judicata* purposes requires not only a comparison of pending claims to the claims that were actually resolved in the first case to come to a conclusion, but also matters that "could have been raised in that action." *Allen*, 449 U.S. at 94, citing *Cromwell*, 94 U.S. at 352. So plaintiff's argument that the bankruptcy proceedings "only adjudicated claims of whether the bankruptcy trustee properly calculated a payoff amount; whether Defendants were obligated to release the deed of trust after receiving that pay-off; and Defendants' attorneys' fees incurred in the bankruptcy court," Pl.'s Mot. at 15, fails because the analysis turns upon what could have been presented in the adversary proceeding, not what was presented.

Plaintiff also maintains that "[t]his Court . . . long ago determined that Davenport's claims for money damages in this action cannot be barred by res judicata from decisions of the bankruptcy court, including contested actions, that are unrelated to litigating money damages." Pl.'s Mot. at 15.

But this is not an accurate characterization of the Court's prior ruling, as the Court did not announce that claims for money damages could not be barred by a decision of the bankruptcy court at all. The Court made it quite clear in *Davenport II* that it was the distinction in the Bankruptcy Rules between a contested proceeding (which was the type that had already been concluded at the time) and an adversary proceeding (which is what has more recently been concluded) that governed the analysis of the claim preclusion issue:

> In a multi-party bankruptcy case, there are two different forms of process: "contested matters" and "adversary proceedings." *See* 10 Collier on Bankruptcy P. ¶ 9014.01 (16th ed. 2018). An objection to a proof of claim initiates a contested matter governed by Federal

15

Rule of Bankruptcy Procedure 9014. *See* Fed. R. Bankr. P. 3007; Fed. R. Bankr. P. 9014; *see also* 10 Collier on Bankruptcy P. ¶ 9014.01 (listing types of contested matters). "Contested matters" are designed to adjudicate simple issues on an expedited basis and are therefore not governed by the full panoply of rules that pertain to federal civil actions. *See* 10 Collier on Bankruptcy P. § 9014.06; *see also* Fed. R. Bankr. P. 9014(c) (limiting the application of Part VII of the Federal Rules of Bankruptcy Procedure governing adversary proceedings, which incorporates the Federal Rules of Civil Procedure, to contested matters). Rather, they only involve motions practice and "reasonable notice and opportunity for a hearing." Fed. R. Bankr. P. 9014(a).

In comparison, "adversary proceedings" are governed by Part VII of the Federal Rules of Bankruptcy Procedure, which incorporates the Federal Rules of Civil Procedure. *See* Fed. R. Bankr. P. 7001. An adversary proceeding is commenced by filing a complaint and serving a copy of the complaint and the summons. *See* Fed. R. Bankr. P. 7001, 7003–04. Rule 7001 lists the types of actions that require an adversary proceeding, and Rule 7001(1) states that an action "to recover money or property" must be made in an adversary proceeding. Fed. R. Bankr. P. 7001(1).

Here, defendants filed a proof of claim against Davenport, and Davenport initiated a contested matter by filing an objection to the proof of claim. *See* Am. Compl. ¶¶ 120–21; Pls.' Mot. at 2. Plaintiffs argue that because Davenport initiated a contested action, Bankruptcy Rule 3007(b) prohibited him from seeking the kind of monetary damages that can be obtained in an adversary proceeding. Pls.' Mot. at 7, citing Fed. R. Bankr. P. 3007(b). Thus, they argue that they could not have brought their claims seeking monetary damages in the bankruptcy proceeding, and that plaintiffs' claims in the civil action are not "the same claim" for *res judicata* purposes. Pls.' Mot. at 7; Pls.' Reply at 2. The Court agrees.

*Davenport II*, 316 F. Supp. 3d at 65.

And between the filing of the motion to reconsider *Davenport I* and the issuance of *Davenport II*, plaintiff did initiate an adversary proceeding, and all parties have acknowledged during this lawsuit that plaintiff could bring his claims for money damages in an adversary proceeding. *See Davenport II*, 316 F. Supp. 3d at 67 (noting that defendants' contention that "nothing stopped Davenport from asserting the causes of action and monetary damages in an

16

adversary proceeding and then seeking to consolidate his claim objection with it" was accurate); *see also* Pls.' Reconsideration Mot. at 7 (contrasting a contested proof of claim with "a plenary adversary proceeding wherein Plaintiffs could seek affirmative monetary damages for Defendants' numerous state law violations").

So while it is true that the claims in the adversary proceeding did not mirror each claim raised in this lawsuit verbatim, the dispositive question is whether those claims are "issues that were or *could have been raised*" in a previous action. *Allen*, 449 U.S. at 94 (emphasis added). Plaintiff elected to initiate an adversary proceeding. At that point, not only was it possible to raise the state and common law claims in that forum, but he was well aware of that fact.[10] As this Court emphasized in *Davenport II*:

> Whether the bankruptcy court would have been a court of competent jurisdiction to resolve all of plaintiffs' state law and common law claims has already been decided by the Court. *See* [*Davenport I*], 296 F. Supp. 3d at 254–56. And plaintiffs have not challenged the Court's finding on this element of *res judicata*.

316 F. Supp. 3d. at 68 n.8.

Because this proceeding has the same nucleus of facts as the second bankruptcy proceeding, and plaintiff could have brought the instant claims there once he initiated an adversary complaint, plaintiff's claims constitute the same cause of action for *res judicata* purposes and the first element has been met.

---

10      In fact, the entire thrust of plaintiff's motion for reconsideration of *Davenport I* was that he had not been able to raise claims in the bankruptcy court because his first petition had *not* been an adversary proceeding. Pls.' Reconsideration Mot. at 2, 7–9.

## II.     Between the same parties

As this Court has previously found, and especially now that Big Bear has been dismissed as a party, the parties to the bankruptcy proceedings and this case are the same.  *See Davenport I*, 296 F. Supp. 3d at 253–54.

## III.     Final, valid judgment on the merits

Plaintiff disputes whether a final, valid judgment on the merits has been issued by the bankruptcy court because he has filed an appeal in the adversary case; he states, without citation, that "the adversary judgment cannot have res judicata or collateral estoppel effect unless and until it is affirmed and no longer appealable." Pl.'s Mot. at 15 n.7.

But plaintiff's appeal does not mean that the bankruptcy court failed to issue a final, valid judgment on the merits.  "The appeal process is available to correct error; subsequent litigation is not."  *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1497–98 (D.C. Cir. 1983) ("Under well-settled federal law, the pendency of an appeal does not diminish the *res judicata* effect of a judgment rendered by a federal court.").  The judgment entered on May 11, 2021 was a final, valid judgment on the merits.[11]

## IV.     By a court of competent jurisdiction

The Court has already determined, three times now, that the bankruptcy court is a court of competent jurisdiction for plaintiff's claims.  *Davenport I*, 296 F. Supp. 3d at 254–256; *Davenport II*, 316 F. Supp. 3d. at 68 n.8.

---

11      Also, even though the adversary proceeding was initiated after this litigation had been filed, all that matters is which case concludes first.  *See U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 416 (6th Cir. 2016) ("[T]he relevant inquiry for *res judicata* is which action resulted in judgment first, not which action was filed first."); *Giragosian v. Ryan*, 547 F.3d 59, 63-65 (1st Cir. 2008) ("[W]hen two actions are pending on the same claim or issue, the first judgment becomes conclusive in the other action, regardless of the order in which the actions were brought.").

### V.        Equitable considerations

That brings us to whether this decision serves the purposes of the doctrine.  "[T]he doctrine is designed to conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum-shopping and piecemeal litigation."  *Hardison*, 655 F.2d at 1288.

The fact that these parties have done little to conserve judicial resources to date, *see, e.g.*, November 2020 Bankruptcy Order at 90 (finding many of defendants' requested fees unreasonable, emphasizing how defendants had greatly expanded the bankruptcy proceedings by bringing "meritless arguments" and comparing their motion to dismiss to a "blatant and totally unproductive obstruction in the administration of this case."), means that this consideration does not weigh as heavily in the analysis as it ordinarily might.  But it still serves these fundamental principles to declare the case to be – at long last – resolved.  That is particularly true when it now appears the parties should have notified the Court that plaintiff had initiated an adversary proceeding at the time when the motion for reconsideration was still pending.

But other aspects of this determination are unsatisfying, as the bankruptcy court declined to decide certain factual issues – in particular, the lawfulness and fairness of defendants' heavy-handed tactics – in its November 2020 Order, and plaintiff will not recover the damages he is seeking here, either.  Thus, it is necessary to emphasize again that "[t]his opinion should not be interpreted in any way as an endorsement of defendants' tactics."  *Davenport I*, 292 F. Supp. 3d at 248–49.

As the bankruptcy court found, defendants' position on whether plaintiff has been in default since the first payment "was without substantial merit, and totally unreasonable." November 2020 Bankruptcy Order at 24.  Defendants insisted that Davenport – whose initial

payment under the highly unfavorable loan terms was accidentally about $3 short – was in default, based solely on a theory that interest was payable in advance, and the bankruptcy court observed that defendants' arrears calculations were "an unjust demand, seeking to coerce far more than was actually and justly due." *Id.* at 97.  And defendants took direct aim at plaintiff's livelihood when they threatened to foreclose on the property, Defs.' SOF ¶ 52, and when they allegedly deviously posted the adjacent row home (that he also owned) on Zillow.  Defs.' SOF ¶ 91; *see also* Am. Compl. ¶ 115.  Moreover, defendants pursued these parallel cases with the same level of rancor and questionable legal strategies that marked their collection efforts.  *See, e.g.*, November 2020 Bankruptcy Order at 81–82 (defendants pressed claim "for far more than was owed" and their theory "lack[ed] any substantial merit").

But while those may be reasons it would be fair to let claims such as those in Count II have their day in court, *see* Am. Compl. ¶ 153 (defendants "leveraged their superior legal knowledge and Davenport's relative lack of financial sophistication to intimidate, threaten, and coerce Davenport into making payments greater than the terms of the Note required, eventually totaling more than $26,000 in overpayment."), this recitation underscores the fact that plaintiff could and should have used the proceedings he chose to institute – after *Davenport I,* and after he filed his motion to reconsider that ruling – to achieve complete relief.  Indeed, plaintiff himself has attempted to assert *res judicata* when it would have benefitted him.  *See* November 2020 Bankruptcy Order at 51–53 (discussing plaintiff's argument "that Djourabchi and Welt are barred from asserting attorney's fees accrued prior to the conclusion of the trial on Davenport's objection to claim under the doctrine of *res judicata*."); 2018 Adversary Compl. ¶ 77 (asking for *res judicata* to be applied against defendants and an order to be entered establishing that "all of Creditors' claims against Davenport related to attorneys' fees or costs, as well as any other potential claims

that could have been brought within the District Court Litigation, are barred from further consideration in this Court").

So while this outcome may leave something to be desired, it is ultimately the consequence of plaintiff's own decisions, and it does serve at least some of the ends of the doctrine of *res judicata*, especially in preventing piecemeal litigation and ensuring that no additional judicial resources are expended.

**CONCLUSION**

Perhaps this ruling will finally lead to the end of "all of this."  Pl.'s Mot. at 1.  Or perhaps, like the Hatfields and the McCoys, these parties will sustain their squabbling over a relatively small amount of money in subsequent appeals, additional bankruptcy litigation, and motions for reconsideration.  With a hope that cooler heads – and perhaps a desire to stop incurring legal fees – will prevail, this Court will do its part by applying the body of law that mandates that it **GRANT** defendants' motion for summary judgment and **DENY** plaintiff's motion.  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  September 30, 2022